[Civ. No. 46789. Second Dist., Div. Three. Feb. 23, 1976.]

JOHN ELLIOTT KAPLAN, Plaintiff and Appellant, v.
ELDORADO INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

William Jerome Pollack for Plaintiff and Appellant.

David Hyatt and Robert A. Stewart, Jr., for Defendant and Respondent.

**OPINION**

**ALLPORT, Acting P. J.**—On June 26, 1971, John Kaplan was injured by the negligence of an uninsured motorist and on December 6, 1973, filed a petition seeking appointment of a third and neutral arbitrator for the adjudication of his claim for damages according to the arbitration provisions of the uninsured motorist coverage of his vehicular liability insurance policy with Eldorado Insurance Company. On October 2, 1974, the neutral arbitrator was appointed by the court.

On January 15, 1975, Eldorado noticed the taking of Kaplan's deposition for January 24, 1975. Thereafter the following occurred in chronological order:

1. The deposition was unilaterally cancelled on January 24, 1975, over the telephone by attorneys for Kaplan without prior notice to attorneys for Eldorado who were present with court reporter at the time scheduled.

2. On January 26, 1975, Eldorado noticed a motion for an order requiring Kaplan to submit to a physical examination.

3. On January 28 Eldorado noticed motions for an order directing Kaplan to submit to oral deposition and for an order vacating the arbitration hearing date and suspending proceedings until completion of discovery.

4. On February 7, 1975, the contested motions were granted. Kaplan was ordered to report for a physical examination on February 10 and for his deposition February 20, 1975. The arbitration hearing date of February 14 was vacated and proceedings stayed until 30 days after completion of deposition.

5. Kaplan failed to appear for either the physical examination or deposition. In this respect the following occurred as reflected by a declaration of David Hyatt filed herein:

"On February 10, 1975, your declarant received a telephone call from Attorney John Lannan, an attorney associated with the Law Offices of William Jerome Pollack, in which Mr. Lannan advised that petitioner, JOHN ELLIOTT KAPLAN, would not be able to appear at the ordered medical examination on February 10, 1975 in Dr. Sarian's offices. Mr. Lannan requested a date for said examination in the week of February 20 and stated that his client would appear for his deposition at that time and he would like the medical examination to be either the day before or the day after the deposition. I, therefore, called Dr. Sarian's office and obtained an appointment for February 19 at 10:00 A.M. and advised Mr. Lannan of same. Mr. Lannan stated that if there was any difficulty with the February 19 date for the medical examination or the February 20 date for the deposition, that he would advise.

"On February 18, 1975, I received a telephone call from Attorney Gerald Owen Ryckman of the Pollack office advising that petitioner

would not appear on February 19 or February 20 for his medical examination and deposition because he was a third-year medical student in Chicago, Illinois. This was the first indication to your declarant that petitioner was not in the State of California. I have been advised at all times previously that the petitioner was a resident of Berkeley, California and had been specifically so advised by the Pollack office in December 1974 and throughout the month of January 1975 that that was where petitioner was a resident and a student. The same representation was made to the Court at the time of hearing of Eldorado's motions on February 7, 1975 for compelling medical examination, deposition of petitioner and order for stay of further arbitration proceedings until the discovery had been completed."

6. On March 4, 1975, Eldorado noticed a motion for an order for sanctions and dismissing the arbitration proceedings on the ground that Kaplan failed to make discovery and to comply with orders of court with respect thereto. The motion was supported by the detailed and lengthy declaration of David Hyatt mentioned above. No opposing documents were filed prior to the hearing.

7. On March 14, 1975, Kaplan's request for a continuance of the hearing was denied and the motion to dismiss was granted. An order of dismissal under provisions of Code of Civil Procedure section 2034, subdivision (d), was made and filed on March 17, 1975.

8. On April 1, 1975, Kaplan noticed a motion under Code of Civil Procedure section 473 to reconsider the orders for physical examination on February 10, 1975, for deposition on February 20, 1975, denying continuance of hearing to dismiss and dismissal. This motion was supported by lengthy and detailed declarations of William Jerome Pollack and John J. Lannan attorneys for Kaplan, and an affidavit of Kaplan[1] wherein it was sought to establish that the court abused its discretion in making the orders and upon other statutory and technical grounds. These declarations were opposed by declaration of Robert A. Stewart, Jr., an associate of David Hyatt. "Where affidavits in support of a motion are controverted by opposing declarations, the duty of determining the credibility of affiants is within the exclusive realm of the trial court, and this determination is rarely disturbed on appeal. (*Troxell v. Troxell* (1965) *supra,* 237 Cal.App.2d 147, 152 [46 Cal.Rptr. 723].)" (*In re Marriage of Carter,* 19 Cal.App.3d 479, 493 [97 Cal.Rptr. 274].)

---

[1] A second affidavit of Kaplan, although bearing no signature, was considered by stipulation.

9. On April 16, 1975, the court granted the motion to reconsider and, after reconsideration of all documents and orders, ordered each original order to remain in full force on the ground of insufficient showing for change.

10. On April 29, 1975, Kaplan filed notice of appeal from the orders of March 14, 1975, and March 17, 1975, dismissing the proceedings.[2] The appeal lies. (Code Civ. Proc., § 904.1, subd. (a); *Unger* v. *Los Angeles Transit Lines,* 180 Cal.App.2d 172, 184-185 [4 Cal.Rptr. 370, 5 Cal.Rptr. 71].)

## *Discussion*

While ordinarily this court is loath to interfere with the discovery process, a function peculiar to the trial court level, the imposition of the ultimate sanction of dismissal dictates considered appellate review of the matter in the case at bench.[3]

The applicable law is summarized and set forth in *Scherrer* v. *Plaza Marina Coml. Corp,* 16 Cal.App.3d 520 at pages 523-524 [94 Cal.Rptr. 85]: "The ultimate sanction of default against a litigant who willfully fails to appear for the taking of his deposition is a drastic penalty which should be sparingly used; ordinarily, it should be used only when lesser sanctions have failed (*Crummer* v. *Beeler,* 185 Cal.App.2d 851 [8 Cal.Rptr. 698]). As the court said in *Caryl Richards, Inc.* v. *Superior Court,* 188 Cal.App.2d 300, 303 [10 Cal.Rptr. 377]: 'One of the principal purposes of the Discovery Act (Code Civ. Proc., §§ 2016-2035) is to enable a party to obtain evidence in the control of his adversary in order to further the efficient, economical disposition of cases according to right and justice *on the merits.* [Citations omitted.] Its purpose is not to "provide a weapon for punishment, forfeiture and the avoidance of a trial on the merits." ' Nevertheless, the unsuccessful imposition of a lesser sanction is not an absolute prerequisite to the utilization of the ultimate sanction authorized by subdivision (d) of section 2034. In the final analysis, the test on appeal is whether the lower court abused its

---

[2]The purported appeal from the order of April 16, 1975, insofar as it is one "denying petitioner's motion to reconsider. . ." is without merit. The order in fact granted reconsideration. The portion of the order denying the motion to vacate is not appealable but will be considered on the appeal from the order of dismissal.

[3]Under Insurance Code section 11580.2, subdivision (f), the discovery provisions of the Code of Civil Procedure are applicable to arbitration proceedings with exceptions not material in the instant case.

discretion, and each case must be decided on its own facts, with the appellant having the burden of showing an abuse. (*Crummer* v. *Beeler, supra,* 185 Cal.App.2d 851; *Petersen* v. *City of Vallejo,* 259 Cal.App.2d 757, 781 [66 Cal.Rptr. 776].)" As was stated in *Sharon* v. *Sharon,* 75 Cal. 1, 48 [16 P. 345]: "In a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason, all the circumstances before it being considered."

The record before us reveals an inexcusable failure on the part of the litigants to expedite a relatively simple arbitration proceeding to a fair conclusion on its merits by cooperative use of available statutory methods calculated to assure such a result. It seems incredible that the issues of liability and damages arising from an accident occurring on June 26, 1971, remained unlitigated or unresolved on March 17, 1975, and had to be terminated by dismissal of the proceedings on that date. It is not our function to search the record to ascertain and characterize the reasons for Kaplan's failure to receive a hearing on the merits in an effort to determine and fix the ultimate blame for such failure but rather it is for us to simply insure that the trial court did not abuse its discretion in dismissing the proceedings.

In applying the applicable principles of appellate review, we have no hesitancy in concluding from the record before us that Kaplan has failed to establish that the order must be reversed as a matter of law. While insufficient standing alone to require dismissal, the unilateral cancellation of the noticed deposition of Kaplan is one of the factors to be considered in connection with the trial court's ruling. (See *Rosen* v. *Superior Court,* 244 Cal.App.2d 586, 595-597 [53 Cal.Rptr. 347].) There appears to have been a protracted and unexplained lack of communication between Kaplan and his attorneys following the instigation of the arbitration proceedings. The explanation is both sketchy and unconvincing. Basically the only reasons advanced for the failure to complete discovery as ordered by the court were conclusionary statements to the general effect that finances and commitments to his academic program were suddenly determined by Kaplan's attorneys to render his participation in the scheduled physical examination and deposition impossible. As was said in *Scherrer* v. *Plaza Marina Coml. Corp., supra,* 16 Cal.App.3d 520, at page 524: "Were we to hold that an attorney and his client can blatantly excuse their failure to appear at two deposition hearings merely because the dates fixed interfered with vacation plans or other business, we would set a precedent which could seriously impair the orderly administration of justice in our already overburdened trial

courts." While we hesitate to characterize counsel's efforts to excuse his client's failure to appear in the instant case as "blatant," we cannot say that such efforts have, as a matter of law, established a legal excuse or justification requiring reversal of the order of dismissal. To put the matter another way our review of the entire record fails to reveal that Kaplan has sustained his burden of showing an abuse of discretion at the trial court level. (*Housing Authority* v. *Gomez,* 26 Cal.App.3d 366, 371-373 [102 Cal.Rptr. 657].)

The order dismissing the proceedings is affirmed.

Cobey, J., and Potter, J., concurred.

A petition for a rehearing was denied March 16, 1976, and appellant's petition for a hearing by the Supreme Court was denied April 22, 1976.