[No. A029200. First Dist., Div. Two. Nov. 21, 1986.]

SABRINA THOMAS, Plaintiff and Respondent, v.
QUOC VI LUONG, Defendant and Appellant.

COUNSEL

Gary R. Selvin and Curotto Law Offices for Defendant and Appellant.

Valerie J. Higgins, Williams Higgins and Higgins & Higgins for Plaintiff and Appellant.

OPINION

BENSON, J.—Quoc Vi Luong is the defendant in an action brought by Sabrina Thomas over personal injury she sustained in a car accident. Luong purports to appeal from both an order striking his answer and entering his default as a sanction for failure to make discovery (Code Civ. Proc., § 2034, subd. (d)),[1] and the subsequent default judgment entered thereon. The default judgment is appealable. (§ 904.1; *Howard* v. *Galloway* (1882) 60 Cal. 10, 11.) ■ The prior order is not appealable but is reviewable on appeal from the judgment. (*Hayward Union etc. School Dist.* v. *Madrid* (1965) 234 Cal.App.2d 100, 107 [44 Cal.Rptr. 268].)

The accident occurred at the corner of Webster Street and Geary Boulevard in San Francisco on December 25, 1981, as Luong made a left turn and collided with Thomas's vehicle. Thomas filed a complaint for damages in October 1982, alleging that Luong negligently caused the accident, injuring her. Luong answered and, in March 1983, Thomas served on Luong a first set of interrogatories consisting of 67 typed questions, many in multiple parts. Luong answered them.

About a year later, on March 20, 1984, Thomas served a "Form Interrogatories Request." These form interrogatories, approved by the Judicial Council, were largely duplicative of the first set of interrogatories except

---

[1]All undesignated section references in this opinion are to the Code of Civil Procedure.

for questions about Luong's education, fluency in English, agency at the time of the accident, the existence of reports of the accident and inspections made at the scene, and a set of questions seeking Luong's contentions about the extent of Thomas's injuries and the amount of damages. Ten days later, on March 30th, Thomas noticed Luong's deposition for May 4th.

Between April 7 and 10, Luong's attorney, Gary L. Selvin, mailed letters to Luong's last known addresses, but the letters were returned as undeliverable.

On April 26, two days beyond the statutory time for response (§§ 1013, 2030, subd. (a)), Attorney Selvin served "answers" to the second set of interrogatories. The answer was a flat objection to "all interrogatories as asked and answered, repetitive, oppressive and burdensome," and referred Thomas to Luong's answers to the first set. Verification was not by Luong, but by Selvin, who averred that his client was absent from the county.

Thomas's attorney, William Higgins, replied by letter the next day. He objected to the "answers" as late, not verified by Luong, not answered separately and fully, and improper in that any objections should have been made within 30 days. (See § 2034, subd. (a).) As a "professional courtesy," Higgins gave Selvin 10 days in which to produce legally sufficient answers and announced that his client would otherwise move for further answers and for sanctions.

Shortly thereafter, the two attorneys agreed to continue Luong's deposition to June 6 and to extend to that date, as well, the time for Luong to answer the interrogatories.

Luong failed to appear at the June 6 deposition or to answer the interrogatories. On June 8, Thomas's attorney wrote to opposing counsel, noting Luong's failures and warning (pursuant to rule 339 of the Cal. Rules of Court) that, absent compliance with discovery by the 18th, Thomas would move for sanctions and to strike Luong's answer and enter his default. The deadline passed, and Thomas brought her motion on June 26, pursuant to section 2034, subdivision (d). Meanwhile, on June 22, Luong's attorney wrote a letter in which he advised a prospective arbitrator (an arbitration date of August 13 is mentioned) that Luong would be admitting liability and that the only issues would be concerning damages.[2]

On July 16, Thomas's motion was heard in superior court before Commissioner (Judge pro tem.) Franklin H. Gentes, who granted the motion

---

[2]It appears from the record that Luong's attorney offered at some point to stipulate to liability and try only the damages issues. The offer was refused.

and that same day issued an order striking the answer, directing entry of default and imposing sanctions of $364 as costs and attorney fees to Thomas. (The proceedings were not transcribed or reported.) Luong's attorney petitioned this court for a stay and writ of mandate against the superior court's order, and the petition was denied by Division One on July 26.

A default hearing was held in superior court the next day, before Judge John Dearman, to determine damages. By a statement of damages (§ 425.11) filed in March, Thomas had claimed general damages of $50,000 plus special damages in an unspecified amount. Thomas testified to special damages totaling $2,912.34, which included lost wages and various medical and related expenses stemming from residual pain in her lower back and shoulder/neck area. The pain, which had persisted off and on over the two and a half years since the accident, was brought on or aggravated, she said, by lifting she performed in her work as a licensed vocational nurse. She anticipated, based on those symptoms and her professional experience, that she would probably have some continued disability for another two and a half years or so. Her counsel suggested to the court that an appropriate award would be $15,000, which he represented was the policy limit of Luong's insurance. Without commenting on the insurance or any part of Thomas's testimony, Judge Dearman announced that judgment would be entered for $12,500 plus costs.

Counsel for Luong was present at the default hearing but, due to his client's default having already been taken, was not permitted to present evidence or otherwise contest Thomas's showing. (§ 585; see *Don* v. *Cruz* (1982) 131 Cal.App.3d 695, 702 [182 Cal.Rptr. 581].)[3]

This timely appeal from the ensuing default judgment was taken on September 21, 1984.[4]

■ The question we are called upon to decide is whether the trial court abused its judicial discretion by imposing the ultimate sanction of striking defendant's answer and entering his default. These actions resulted in a monetary judgment against the defendant without his having had the opportunity to contest any aspect of plaintiff's case, including damages. Having considered the relevant facts before the court at the time discretion was exercised, the established legal principles and policies germane to the issue

---

[3]Luong's counsel did, however, move at the start of the hearing for a two- to three-week continuance to allow time for him to bring a motion to set aside the default. The motion was denied. On this appeal, Luong has not argued that the denial of the continuance was error.

[4]Luong's counsel represents in his briefing that private detectives hired to find Luong finally succeeded some two weeks after the notice of appeal had been filed.

to which discretion was directed, and the settled standards governing appellate review of discretionary rulings, we conclude that indeed discretion was abused and that the judgment must be set aside.

Section 2034, subdivision (d) allows the imposition of sanctions against a party who wilfully fails to appear at a deposition or to answer interrogatories. A variety of sanctions are provided by the statute. The court ". . . may strike out all or any part of any pleading . . . or dismiss the action or proceeding or any part thereof, or enter a judgment of default . . . or impose other penalties of a lesser nature that the court may deem just, . . . ."

The use of the ultimate sanction, as that imposed in the case before us, is a drastic penalty and case law recognizes that it should be sparingly used. (*Kaplan* v. *Eldorado Ins. Co.* (1976) 55 Cal.App.3d 587, 591 [127 Cal.Rptr. 699].) In exercising its sanction power under the discovery statutes the trial court must keep a "fundamental precept" fairly in mind. That is, that "'The penalty should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery [so that a] sanction should not operate in such a fashion as to put the prevailing party in a better position than he would have had if he had obtained the discovery sought and it had been completely favorable to his cause.'" (*Wilson* v. *Jefferson* (1985) 163 Cal.App.3d 952, 958 [210 Cal.Rptr. 464] quoting *Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 793 [149 Cal.Rptr. 499].)

A purpose of the discovery act, as observed in *Caryl Richards, Inc.* v. *Superior Court* (1961) 188 Cal.App.2d 300, 303 [10 Cal.Rptr. 377] is to ". . . enable a party to obtain evidence in the control of his adversary in order to further the efficient, economical disposition of cases according to right and justice *on the merits*. [Citations.] Its purpose is 'not to provide a weapon for punishment, forfeiture and the avoidance of a trial on the merits.' [Citations.]"

While there is no question but that a trial court, under appropriate circumstances, has the power to sanction a party who refuses to provide discovery to which his adversary is entitled, the sanction chosen must not be the result of an arbitrary selection. It should not deprive a party of all right to defend an action if the discriminating imposition of a lesser sanction will serve to protect the legitimate interests of the party harmed by the failure to provide discovery.

Here, defendant's counsel, faced with the reality of a missing client, offered to stipulate to liability. This offer was made well in advance of the sanction hearing and was rejected by plaintiff's counsel. Defendant's

willingness to stipulate to liability and "solely arbitrate the issue of damages" was reiterated in his opposition papers filed with the court prior to the sanction hearing. Had plaintiff's counsel accepted the stipulation, or had the trial court exercised the lesser sanction of striking the defendant's pleadings insofar as they contested liability or causation, the deposition of the defendant would have been superfluous. If plaintiff required further protection, the additional lesser sanction of precluding defendant from testifying at trial (or arbitration) could have been imposed.

With respect to the defendant's failure to answer the form interrogatories, we first observe that defendant had provided much of the information sought by answering the first set of interrogatories. By imposing the lesser sanction of striking those portions of defendant's answer that contest liability and causation, much of the information sought by the form interrogatories becomes irrelevant and, if additional protection were required, the court could have imposed a further lesser sanction of denying introduction of evidence contradicting or amending the prior answers. As to the "Personal Injury Contention Interrogatories" (Judicial Council Form Interrogatories 16.1–16.9), a number of lesser sanctions could have been imposed by the court which would have provided ample protection to plaintiff and yet allowed defendant to maintain a defense to the damage aspect of the case. Defendant could have been denied the right to introduce defense medical testimony, or to contend that medical services were unrelated to the accident, or to contend that the cost of medical services or income loss was unreasonable or unrelated, etc. We do not pass on the propriety of applying these lesser sanctions individually or collectively in the present case, but merely point out their availability at the time of the sanction hearing. Even if all the lesser sanctions were imposed, at the very least defendant would have retained the fundamental right to cross-examine the plaintiff, to object to inadmissible evidence, and to argue the issue of the value of pain and suffering and the extent of residual disability before the trier of fact.

In our judgment the sanction imposed substantially exceeded what was reasonably required to protect the plaintiff. It constituted a forfeiture. Judicial discretion was abused.

Before concluding we wish to express our awareness of the section 2034, subdivision (d) requirement which calls for a showing of "willfulness" before sanctions can be imposed. It would appear to us that, given the defendant's absence for approximately a four-month period during which he failed to advise his counsel of his whereabouts, coupled with his earlier response to plaintiff's extensive interrogatories, a substantial question is raised as to his "willfulness." However, in view of our determination that

there was an abuse of discretion in any event, we elect not to address this issue.

We reverse the judgment and vacate the order striking defendant's answer and entering his default. The cause is remanded to the trial court for further proceedings in accordance with this opinion.

Defendant is awarded costs on appeal.

Kline, P. J., concurred.

**SMITH, J.**—I respectfully dissent. Simply put, this case involves the imposition of statutory sanctions by a trial court upon a defendant who has disappeared from the county without notifying his attorney of his whereabouts. To reverse the action below, it is not enough that we find that the trial court could have acted differently, or that we would have acted differently. Rather we must find the action of the trial court to have been arbitrary, capricious, or whimsical. Conduct beyond tne bounds of reason. Not only has there been no such conduct in this case, but my colleagues have misapplied the abuse-of-discretion standard of review thereby placing new limitations on the sanction of striking an answer under Code of Civil Procedure section 2034, subdivision (d) (hereafter section 2034(d)).

Section 2034(d) expressly provides for striking a defendant's answer and entering his default as a sanction for willful failure to appear at a deposition or answer interrogatories.[1] That sanction is the "ultimate" sanction at the court's disposal and so should be used sparingly and consistently with the statutory purpose of furthering the efficient, economical disposition of cases on the merits. (*Kaplan* v. *Eldorado Ins. Co.* (1976) 55 Cal.App.3d 587, 591 [127 Cal.Rptr. 699].) Nevertheless, the ultimate sanction, which avoids trial on the merits, is one of the discretionary alternatives authorized by statute. "'In the final analysis, the test on appeal is whether the lower court abused its discretion, and each case must be decided on its own facts, with the appellant having the burden of showing an abuse. [Citations].' . . . 'In a legal sense, discretion is abused whenever, in its exercise, *a court exceeds the bounds of reason,* all the circumstances before it being considered.'" (*Id.,* at pp. 591-592, quoting *Scherrer* v. *Plaza Marina Coml. Corp.* (1971) 16 Cal.App.3d 520, 524 [94 Cal.Rptr. 85], and *Sharon* v. *Sharon* (1888) 75 Cal. 1, 48 [16 P. 345].) (Italics added.)

---

[1]Section 2034(d) reads in part: "If a party . . . willfully fails to appear before the officer who is to take his deposition, after . . . proper notice . . ., the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party, or impose other penalties of a lesser nature the court may deem just, . . ."

My colleagues conclude that a number of lesser sanctions in some combination could have fully protected Thomas against the loss of discovery. They suggest that the court below could have struck those parts of the answer contesting liability and causation, and let the case proceed solely contested on damages. Further, they suggest that the trial court could have additionally employed sanctions hindering but not altogether foreclosing a defense on damages.

On the limited record before us, I am not convinced that the lesser sanctions would have adequately bridged the discovery gap or that, assuming some acceptable alternative to striking existed, choosing the ultimate sanction was beyond the bounds of reason.

I particularly doubt that striking the liability and causation parts of the answer could have put Thomas in as good a position as she would have enjoyed had she obtained the discovery she sought. (*Wilson* v. *Jefferson* (1985) 163 Cal.App.3d 952, 958 [210 Cal.Rptr. 464].) Much of the new information sought through the interrogatories pertained to damages, and the deposition presumably would have covered damages as well. I therefore cannot accept the majority's conclusion that an admission of liability would have rendered the deposition "superfluous." (Maj. opn. at p. 82.) Luong was, of course, an eyewitness who personally felt the impact of the accident. He probably observed Thomas's physical and emotional condition immediately afterward, and could have spoken with her or other eyewitnesses on the scene. Damages were obviously a substantial issue. In fact, the trial court could reasonably have seen damages as the *only* substantial issue in the case. Luong's attorney had offered, in settlement and again by arbitration, to limit the case to damages. We do not have the entire case file before us, but the trial court did, and was obligated to, review the entire record in determining whether the ultimate sanction should be imposed. (*Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 796 [149 Cal.Rptr. 499].) Based on the record we do have—which does not even include a transcript of the sanctions hearing or any of Luong's first round of answers to interrogatories—I would defer to the trial court's better perspective. The court was not impressed with Luong's counsel's offer to admit liability as a sanction, and the record on appeal supports the court's apparent view that this was a damages case, where liability was a minor issue likely to be conceded in any event.

More was needed than an admission of liability or causation. My colleagues apparently agree. They propose additional sanctions aimed at narrowing the defense of damages at trial or in arbitration. One suggestion is to preclude Luong from testifying. However, this is a hollow sanction. Four months had passed, and Luong had not been found. For all that anyone

knew, he would not be available to testify anyway, and if he did show up, Thomas might have *wanted* his testimony for the damages aspect of the case.

Other suggested sanctions include denying Luong the right to introduce medical testimony, to contest the reasonableness or costs of medical services, to introduce evidence contradicting prior answers, or to dispute claimed lost income. In the aggregate, those sanctions do not differ much from the ultimate sanction itself. Assuming that some combination of those sanctions could have placed Thomas in approximately the same position as though her discovery efforts had been rewarded in full, the difference between that option and the option taken by the court is too small to *compel* the exercise of discretion either way as a matter of law. (*Kaplan* v. *Eldorado Ins. Co.*, *supra*, 55 Cal.App.3d 587, 592.) I cannot say, as the majority does, that no reasonable judge would have chosen the striking-default alternative given the relatively narrow range of alternatives presented. We can reverse only where the action taken was arbitrary, capricious or whimsical. (*Calvert Fire Ins. Co.* v. *Cropper* (1983) 141 Cal.App.3d 901, 904 [190 Cal.Rptr. 593].) This is not such a case, even though we might not personally agree with the choice made.

The majority decline to state whether their proposed lesser sanctions, either individually or collectively, would have been proper (maj. opn. at p. 82), yet they find abuse of discretion in the course chosen. They say, "Even if *all* the lesser sanctions were imposed, at the very least defendant would have retained the fundamental right to cross-examine the plaintiff, to object to inadmissible evidence, and to argue the issue of the value of pain and suffering and the extent of residual disability before the trier of fact." (Maj. opn. at p. 82, italics added.)

I submit that if preserving those "fundamental rights" is the test by which discretion must be scrutinized, then abuse of discretion will be found *in every case* where the ultimate sanction is chosen. This is contrary to legislative intent.

The sanction of striking an answer under section 2034(d) operates by law in this state to deprive the defendant of those "fundamental rights" every time. The defendant is left in the same position as if no answer had ever been filed, and he is denied any participation in the subsequent prove-up hearing on damages. (*Greenup* v. *Rodman* (1986) 42 Cal.3d 822, 828 [231 Cal.Rptr. 220, 726 P.2d 1295]; Code Civ. Proc., § 585.) The Legislature knew that when it authorized the striking-default sanction as a discretionary alternative. Thus to suggest, as the majority does, that preserving a participatory damages hearing is the way that discretion must be exercised rewrites the statute.

I do agree, *generally,* with the case law proposition that the sanction chosen should not give the moving party more than he could have obtained by having his discovery efforts rewarded with "completely favorable" results. (*Deyo* v. *Kilbourne, supra,* 84 Cal.App.3d 771, 793; *Wilson* v. *Jefferson, supra,* 163 Cal.App.3d 952, 958.) However, imposing the ultimate sanction *always* gives the defendant more than he could have had from the discovery, and the Legislature says that that can be a permissible exercise of discretion. The *Deyo-Wilson* rule accordingly cannot be literally followed in every case or it would effectively prohibit the ultimate sanction altogether.[2]

I would uphold the court's exercise of discretion.

I briefly address one remaining issue that my colleagues do not reach. I find that the requisite finding of "willfulness" for the section 2034(d) sanction is supported by the record. A party's failure to keep his attorney informed of his whereabouts may be deemed willful failure to comply with discovery. (*Cornwall* v. *Santa Monica Dairy Co.* (1977) 66 Cal.App.3d 250, 253 [135 Cal.Rptr. 761].) This is so because the noncomplying party has the burden of showing that his failure to comply was *not* willful, and that burden cannot be met when the party is not present and his counsel cannot show where the party is or how long the absence will continue. (*Id.,* at pp. 252-253.) That was the case here. Luong protests that his absence was "temporary," noting that detectives succeeded in finding him some six weeks after the notice of appeal herein was filed. However, that is a hindsight view. At the time of the sanctions hearing, counsel had been unable to locate Luong for four months and could not predict when he might be found.

For the foregoing reasons, I would affirm the judgment.

Respondent's petition for review by the Supreme Court was denied February 4, 1987.

---

[2]*Deyo* and *Wilson* both recognize that the ultimate sanction of striking a defendant's answer is available when appropriate to the defendant's dereliction. (*Deyo, supra,* 84 Cal.App.3d 771, 793 & fn. 26; *Wilson, supra,* 163 Cal.App.3d 952, 958.) The sanction was inappropriate in *Deyo* because the defendant, while serving *objectionable* answers to interrogatories in response to a discovery order, nevertheless had filed the discovery. (*Deyo, supra,* 84 Cal.App.3d at pp. 797-798.) In *Wilson,* the defendant's dereliction affected only discovery about a single affirmative defense that would not have been dispositive of other issues in the case. (*Wilson, supra,* 163 Cal.App.3d at pp. 958-959.)