[No. G031774. Fourth Dist., Div. Three. Apr. 13, 2004.]

DAPHNE MIRANDA, Plaintiff and Appellant, v.
21ST CENTURY INSURANCE COMPANY, Defendant and Respondent.

916

---

Counsel

Sedin, Begakis & Bish, Mindy S. Bish and B. Kay Shafer for Plaintiff and Appellant.

Demler, Armstrong & Rowland, James P. Lemieux and Jennifer L. Paulsen for Defendant and Respondent.

---

Opinion

**IKOLA, J.**—The court dismissed plaintiff Daphne Miranda's underinsured motorist arbitration because she refused to obey a prior discovery order. Plaintiff contends the court lacked subject matter jurisdiction to dismiss the arbitration proceeding, and also lacked personal jurisdiction to make any orders against her. In the alternative, plaintiff contends the court abused its discretion by imposing a terminating sanction without first imposing a lesser sanction. We disagree with all of plaintiff's arguments and affirm the judgment of dismissal.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

On November 8, 1999, plaintiff sustained injuries in an automobile accident with an underinsured motorist, Marisela Mondragon. She filed an action against Mondragon in superior court and, about six months later, she demanded arbitration of her underinsured motorist claim against her insurer, defendant 21st Century Insurance Company. Shortly after demanding arbitration with defendant, plaintiff settled her superior court action with Mondragon. The demand for arbitration with defendant remained pending.

Defendant commenced discovery in connection with the underinsured motorist claim, including service of demands for production of documents, specially drafted interrogatories, form interrogatories, and subpoenas to the medical providers who treated plaintiff for her accident injuries. On December 3, 2001, plaintiff served responses to defendant's form interrogatories in which she stated, inter alia, that she was treated for postconcussion symptoms by a neurologist with Kaiser Permanente in Baldwin Park from the day after the accident through July 24, 2000.

---

[1] The recitation of facts is taken from declarations filed by defendant in support of a motion to compel discovery and in support of a later motion to dismiss. Plaintiff offered no substantive opposition to either motion, choosing instead to rely on her contention that the court lacked personal jurisdiction, even after she lost this argument on her initial motion to compel. As a result, the court necessarily decided the motions based on the declarations submitted by defendant.

From a review of the medical records provided in discovery, defendant learned that plaintiff had also been treated at medical facilities known as Kaiser Pasadena and Kaiser Hollywood-Sunset. Defendant followed up with a subpoena directed to those facilities requesting plaintiff's medical records. Both Kaiser facilities responded that, because of the nature of the records, they would need signed authorizations from plaintiff before they could release the records.[2] Thus began a series of letters to plaintiff's counsel requesting plaintiff to sign the authorizations, culminating in a letter confirming a phone conversation in which plaintiff's counsel told defendant's counsel that plaintiff "will not be signing the medical release[s]."

Meanwhile, defendant took plaintiff's deposition in late February 2002. At the deposition, plaintiff testified she had been treating with the neurologist at the Kaiser Baldwin Park facility for "lightheadedness" and "dizziness" beginning one month *before* the accident. She also testified she had experienced dizziness since 1997, and had sought treatment "many times" for the condition because she was "so frustrated." She acknowledged she had consulted physicians with Kaiser Pasadena and Kaiser Hollywood-Sunset with respect to her problem. Plaintiff also testified she had been tested with "the first EEG, the first CAT scan and the first MRI" *before* the accident, leading to an ultimate diagnosis of epilepsy.

Unable to obtain plaintiff's authorization for release of her records, defendant filed an "application to commence discovery in underinsured motorist matter" in the superior court, together with a motion to compel compliance with the subpoenas for medical records. The "compliance" defendant requested was an order compelling plaintiff to sign the authorizations for release of her medical records from Kaiser Pasadena and Kaiser Hollywood-Sunset. Defendant asserted it was entitled to seek discovery orders from the court pursuant to section 11580.2, subdivisions (f) and (p) of the Insurance Code.[3]

The "application to commence discovery" and the motion to compel compliance with the subpoenas were served by mail on counsel for plaintiff,

---

[2] The record does not reflect the reason the medical facilities requested plaintiff's authorization. Perhaps defendant did not comply with the procedures to obtain "personal records" of a "consumer" as required by section 1985.3 of the Code of Civil Procedure, in which case the medical facilities had a sufficient basis to refuse compliance. (Code Civ. Proc., § 1985.3, subd. (k).) If section 1985.3 had been complied with, the record does not indicate why defendant did not simply move to compel compliance with the subpoena pursuant to section 1987.1, instead of pursuing an unwilling plaintiff for a signed authorization. These matters remain mysteries because of the scant record presented to the trial court.

[3] All further statutory references are to the Insurance Code unless otherwise stated.

the same lawyer who had responded to earlier discovery served by defendant, and who had been representing plaintiff in the arbitration, including the ongoing dispute concerning the medical records. The record on appeal does not contain any written opposition to the motion to compel. The minute order for the date of the hearing reflects only that counsel for plaintiff was "specially appearing." The parties did not supply this court with a reporter's transcript for this hearing. But a reporter's transcript for the hearing on the motion to compel is included in the clerk's transcript as an exhibit to the subsequent motion to dismiss. There, counsel stated, "I'm just here to argue that the court doesn't have jurisdiction over them." Counsel continued, "Our defendant wasn't personally served."[4] No evidence was offered to establish lack of personal service, although, as noted, the proof of service filed with the motion indicates it was served by mail on plaintiff's counsel.

The court granted the motion to compel by ordering plaintiff to sign the authorizations for release of her medical records. Defendant's counsel sent to plaintiff's counsel a copy of the order together with blank authorizations for plaintiff's signature. After several unanswered telephone calls, plaintiff's counsel finally announced that her client would not be signing the authorizations. Defendant again made written demand for compliance with the order, and, when no response was received, filed a motion requesting the terminating sanction of dismissal. This time, plaintiff filed written opposition, which had a title that explained her entire argument: "[C]laimant's special appearance for the purpose of opposing respondent's motion for dismissal and sanctions on the grounds that the court lacked personal jurisdiction over the claimant on August 12, 2002, therefore said order is void and that the court still lacks personal jurisdiction over the claimant to hear the instant motion." The court was not impressed with plaintiff's argument, granted the motion to dismiss, and granted monetary sanctions against plaintiff and her counsel.

Plaintiff filed a premature notice of appeal from the nonappealable minute order granting the motion to dismiss,[5] but a signed judgment of dismissal was entered four weeks after the minute order. We treat the notice of appeal as having been filed immediately after entry of judgment. (Cal. Rules of Court, rule 2(d)(2).)

---

[4] Counsel likely referred to his client as "defendant" because he was specially appearing for the party *responding* to the motion.

[5] A minute order granting a motion to dismiss is " '*ineffectual and nonappealable; no appeal can be taken except from the order signed and filed.*' " (*In re Marriage of Macfarlane & Lang* (1992) 8 Cal.App.4th 247, 253, fn. 4 [10 Cal.Rptr.2d 157]; see Code Civ. Proc., § 581d.)

## DISCUSSION

*The Superior Court Has Exclusive Subject Matter Jurisdiction over*
*Discovery Disputes Arising in Uninsured Motorist Arbitrations*[6]

■ Plaintiff's first contention, that the court did not have subject matter jurisdiction to enter discovery orders and to dismiss the uninsured arbitration proceeding, is raised for the first time on appeal. Fortunately for plaintiff, subject matter jurisdiction is one of the few issues not waived for failure to raise it in the trial court. "Although the [subject matter] jurisdiction of [the] court was not questioned during the trial, it is well established that questions of [subject matter] jurisdiction are never waived and may be raised for the first time on appeal." (*Costa v. Banta* (1950) 98 Cal.App.2d 181, 182 [219 P.2d 478].) Accordingly, we consider plaintiff's argument on the merits.

Stripped to its essentials, plaintiff's argument asserts: (1) section 11580.2, subdivision (f), provides for contractual arbitration of her uninsured motorist claim; (2) the superior court lacks jurisdiction to dismiss a contractual arbitration because only the arbitrator has that power; and (3) the superior court lacked jurisdiction to make rulings on "arbitration-related discovery," and for that reason had no authority to impose a terminating sanction. While plaintiff's first premise is correct—the statute provides for contractual arbitration—her conclusions are wrong. Plaintiff fails to address, or even to mention, the text of the entire statute—text that dooms her argument by expressly committing the resolution of discovery disputes in uninsured motorist arbitrations to the jurisdiction of the superior court.

Section 11580.2, subdivision (a) requires all automobile insurance policies delivered in California, and which cover bodily injury liability, to include insurance for amounts the insured is legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle.[7] "[T]he determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration." (§ 11580.2, subd. (f).) The statute also permits the attorney of a party to the arbitration to issue subpoenas pursuant to section 1985 of the Code of Civil Procedure. Importantly, the statute then adopts the civil discovery statutes in their entirety. "Article 3 (commencing with Section 2016) of Chapter 3 of Title 3 of Part 4

---

[6] For convenience, we will refer to "uninsured" and to "underinsured" motorist arbitrations as "uninsured motorist arbitrations." For purposes germane to this appeal, there is no distinction.

[7] The statute also permits the insured to opt out of this coverage by agreement with the insurer executed in a prescribed form.

of the Code of Civil Procedure shall be applicable to these determinations, and *all rights, remedies, obligations, liabilities and procedures* set forth in Article 3 shall be available to both the insured and the insurer *at any time after the accident,* both before and after the commencement of arbitration, if any." (§ 11580.2, subd. (f), italics added.)

After the wholesale incorporation of all the discovery procedures from the Code of Civil Procedure, Insurance Code section 11580.2, subdivision (f), then carves out certain limitations. One encounters some difficulty in reading these limitations because the statute makes reference to specific sections of article 3 of the Code of Civil Procedure that do not correspond to existing law. Section 11580.2 was enacted in 1961 and, except for a 2001 amendment substituting the word "that" for "which" in two places in subdivision (f), it has not been otherwise amended. In 1986, however, article 3 of the Code of Civil Procedure was rewritten and reorganized as the Civil Discovery Act of 1986. The Legislature has never adopted legislation to conform section 11580.2, subdivision (f), to the newly numbered sections in article 3 of the Code of Civil Procedure. This omission requires the practitioner to research the discovery statutes as they existed in 1961 to determine the substantive effect of the specific references made in section 11580.2, subdivision (f). For the purpose of resolving the instant case, however, this legislative gap poses no insurmountable hurdle. The substance of the specific statutory references, and the effect of the corresponding limitation thereby contained in section 11580.2, is found by consulting the pre-1986 civil discovery act. If the corresponding provision of the Civil Discovery Act of 1986 (Civil Discovery Act) is not inconsistent with the former version, the legislative intent is not in doubt. Fortunately, that is the case.

The provision most germane to this appeal is found in section 11580.2, subdivision (f)(1), which states: "Whenever in Article 3 [of the Code of Civil Procedure], reference is made to the court in which the action is pending, or provision is made for application to the court or obtaining leave of court or approval of court, the court that shall have *jurisdiction* for the purposes of this section shall be the superior court of the State of California, in and for any county that is a proper county for the filing of a suit for bodily injury arising out of the accident, against the uninsured motorist, or any county specified in the policy or an endorsement added thereto as a proper county for arbitration or action thereon." (Italics added.) This provision would have no meaning whatever had the Legislature intended, as urged by plaintiff, to preclude the superior court from exercising jurisdiction to resolve discovery disputes in connection with uninsured motorist arbitrations.

We have found only two reported cases dealing with a discovery dispute in connection with an uninsured motorist arbitration, and neither discusses the jurisdictional issue—the jurisdiction of the superior court to act in such matters apparently was not questioned in the face of the unambiguous language of the statute.[8] Thus, in *Workman v. Superior Court, supra,* 176 Cal.App.3d 493 [222 Cal.Rptr. 69], the Court of Appeal issued a writ of mandate directing the trial court to vacate its order relieving the insurance carrier from its default in failing to timely respond to requests for admissions served in connection with an uninsured motorist arbitration. (*Id.* at p. 502.) No issue was raised about the jurisdiction of the superior court to hear the matter, and to grant discovery sanctions. To the contrary, the Court of Appeal commanded the superior court to exercise its jurisdiction by imposing a discovery sanction, finding the superior court had no authority to deny the sanction by the terms of the then existing discovery statute.

On point to the instant case is *Kaplan v. Eldorado Ins. Co., supra,* 55 Cal.App.3d 587, where the court affirmed the dismissal of an uninsured motorist arbitration as a discovery sanction. The later criticism of the *Kaplan* decision in *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1801–1802 [13 Cal.Rptr.2d 678], is not persuasive. The *Brock* court criticized the *Kaplan* decision for allowing the *court* to dismiss a contractual arbitration proceeding as a discovery sanction. But in doing so, the *Brock* court characterized the *Kaplan* case as a "contractual arbitration proceeding relating to a personal injury controversy" (*Brock* at p. 1801), failing to mention that it was an uninsured motorist arbitration between the insured and the insurer governed by the explicit provisions of section 11580.2.

Plaintiff nevertheless reasons the superior court lacks subject matter jurisdiction because section 11580.2 requires auto insurance policies to provide for arbitration of uninsured motorist claims; an insurance policy is a contract; and, therefore, arbitrations are "contractual arbitrations" governed by the Code of Civil Procedure section 1280 et seq. Plaintiff is mostly right. Section 1280 et seq. of the Code of Civil Procedure, and the common law applicable to arbitrations, surely do apply to uninsured motorist arbitrations. (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 342 [79 Cal.Rptr.2d 308, 965 P.2d 1178] [Contractual arbitration law "is implicated because the uninsured motorist coverage law requires an automobile liability insurance

---

[8] *Workman v. Superior Court* (1986) 176 Cal.App.3d 493 [222 Cal.Rptr. 69] and *Kaplan v. Eldorado Ins. Co.* (1976) 55 Cal.App.3d 587 [127 Cal.Rptr. 699]. The parties have not cited any other cases involving a discovery dispute in connection with uninsured motorist arbitration, and we have found no additional cases.

policy, which is a *contract* . . . , to provide for *arbitration*"].) But that does not mean we are free to ignore the statutory directive that commits discovery disputes arising in uninsured motorist arbitrations to the superior court.

There are, to be sure, several inconsistencies between the general law governing contractual arbitrations and the specific law governing uninsured motorist arbitrations. For example, although discovery in contractual arbitrations is always permitted in disputes arising out of injury or death caused by the wrongful act of another (Code Civ. Proc., § 1283.1, subd. (a)), it may only be commenced after the appointment of the arbitrator. (Code Civ. Proc., § 1283.05, subd. (a).) On the other hand, in uninsured motorist arbitrations, discovery may be commenced both before and after the commencement of arbitration. (§ 11580.2, subd. (f).) Further, in contractual arbitrations, "depositions for discovery" may not be taken unless the arbitrator grants permission to do so. (Code Civ. Proc., § 1283.05, subd. (e).) In uninsured motorist arbitrations, however, depositions may be taken for discovery as permitted in any court action, without obtaining prior approval of the arbitrator. (§ 11580.2, subd. (f).) Significantly, in contractual arbitrations, the arbitrator has the power to "enforce the rights, remedies, procedures, duties, liabilities, and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions, and penalties as can be or may be imposed in like circumstances in a civil action by a superior court of this state under the provisions of [the Code of Civil Procedure], except the power to order the arrest or imprisonment of a person." (Code Civ. Proc., § 1283.05, subd. (b).) But in uninsured motorist arbitrations, the Civil Discovery Act "shall be applicable" and "all rights, remedies, obligations, liabilities and procedures set forth in Article 3 [of the Civil Discovery Act] shall be available to both the insured and the insurer . . . . [¶] [W]henever . . . provision is made for application to the court or obtaining leave of court or approval by the court, the court that shall have jurisdiction for the purposes of this section shall be the superior court of the State of California." (§ 11580.2, subd. (f)(1).)

"In recognition of the courts' constitutional role to construe, not write, statutes, ' "[a]ll presumptions are against a repeal by implication." ' 'It is the duty of this court to harmonize statutes on the same subject . . . , giving effect to all parts of all statutes if possible . . . .' '[W]e will find an implied repeal "only when there is no rational basis for harmonizing the two potentially conflicting statutes . . . , and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.' " ' [¶] Significantly, whether the canon invoked is that the specific statute prevails

over the general or that the latest statutory expression prevails, such canons share the requirement that the enforcement of one duly enacted statute at the expense of another on the same subject only applies when the two statutes cannot be reconciled. Restraint of judicial trespass into the legislative province is no doubt the reason for the rule that a judicially determined repeal requires a repugnancy between the two statutes that prevents their concurrent operation—a restraint that has constitutional underpinnings premised on the separation of powers." (*Medical Board v. Superior Court* (2001) 88 Cal.App.4th 1001, 1013–1014 [106 Cal.Rptr.2d 381], fns. omitted.)

Thus, the contractual arbitration statute, giving an arbitrator the statutory power to exercise remedies under the Civil Discovery Act, must be reconciled, if possible, with the uninsured motorist law, which not only makes the Civil Discovery Act applicable, but expressly requires that whenever the Civil Discovery Act makes reference to a court, the court that has jurisdiction shall be the superior court. We may harmonize these conflicting provisions by reading the discovery provisions governing uninsured motorist arbitrations as an exception to the discovery provisions governing contractual arbitrations generally. We will not presume the Legislature intended to allow concurrent jurisdiction to resolve discovery disputes, both by the arbitrator and by the court, each having essentially coextensive powers to rule in the same matter. The potential for inconsistent and competing rulings in such an environment cannot be gainsaid. " '[I]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' " (*People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].)

In reading the discovery provisions for uninsured motorist arbitrations as an exception to the discovery provisions in contractual arbitrations generally, we invoke a well-established principle of statutory construction, often applied where statutes cannot otherwise be reconciled. "[W]hen a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it." (Code Civ. Proc., § 1859.) " 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. Where the special statute is later it will be regarded as an exception to or qualification of the prior general one; and where the general act is later the special statute will be considered as remaining an exception to its terms

unless it is repealed in general words or by necessary implication.' " (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593]; see also *McLaughlin v. State Bd. of Education* (1999) 75 Cal.App.4th 196, 223–224 [89 Cal.Rptr.2d 295]; *Tapia v. Pohlmann* (1998) 68 Cal.App.4th 1126, 1133 [81 Cal.Rptr.2d 1].)

■ Here, the arbitration provisions in the Code of Civil Procedure have general application, governing *all* types of contractual arbitrations. And the discovery rights provided by sections 1283.05 and 1283.1 of the Code of Civil Procedure have general application, governing *all* arbitrations arising out of or resulting from injury or wrongful death, and, to the extent the contract to arbitrate incorporates these provisions, other arbitrations as well. On the other hand, the right to an uninsured motorist arbitration is available *only* to (1) an insured under a policy of auto insurance covering liability who is entitled to recover damages for bodily injury or wrongful death from the owner or operator of an uninsured vehicle, and (2) the insurer issuing the insurance policy. Further, the only issue for which the right to arbitrate is assured in an uninsured motorist arbitration is the determination whether the insured is legally entitled to recover damages from the uninsured motorist, and, if so, the amount. Thus, the statute providing for uninsured motorist arbitrations is but a special statute having narrower application than the general contractual arbitration statutes.

■ The uninsured motorist arbitration statute, section 11580.2, subdivision (f), was enacted in 1961. Section 1283 of the Code of Civil Procedure was also enacted in 1961, and provided that depositions were permitted in arbitration proceedings only for use as evidence, and not for discovery, and only if the witness could not be compelled to attend the arbitration, and then only with the permission of the arbitrator. Sections 1283.05 and 1283.1 of the Code of Civil Procedure, the provisions allowing broad discovery in arbitrations arising in injury and wrongful death actions, and giving the arbitrator broad powers to rule on discovery disputes, were not enacted until 1970. Thus, at least with respect to the jurisdictional conflict here at issue, the broad grant of discovery authority to the arbitrator under the Code of Civil Procedure was enacted later than the uninsured motorist provisions placing jurisdiction in the court. Thus, under the *Williamson* rule,[9] the special statute, section 11580.2, subdivision (f), is considered as a remaining exception to the terms of the general statute, Code of Civil Procedure section 1280 et seq. Section 11580.2, subdivision (f) has not been repealed by the general contractual

---

[9] *In re Williamson, supra*, 43 Cal.2d 651, 654.

arbitration statutes either in words or by necessary implication. The discovery rules governing uninsured motorist arbitrations coexist with the discovery rules governing all other contractual arbitrations. "Absent an express declaration of legislative intent, we will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting statutes . . . , and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' " (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 477 [66 Cal.Rptr.2d 319, 940 P.2d 906].)

■ We conclude the court had the power to rule on the discovery dispute. And because we conclude the Legislature could not have intended the arbitrator and the court to possess concurrent power, the uninsured motorist law grants the superior court the *exclusive* jurisdiction to hear discovery matters arising under uninsured motorist arbitrations. Invested with the exclusive power to rule, and because the uninsured motorist statute makes available "all rights, remedies, obligations, liabilities and procedures set forth in [the Civil Discovery Act]" (§ 11580.2, subd. (f)), the court necessarily had the power to dismiss the case as a terminating sanction. (Code Civ. Proc., § 2023, subds. (a)(7) & (b)(4)(C).)

We see no need to discuss in detail the cases cited by plaintiff in support of her contention that the court lacked subject matter jurisdiction to rule on the discovery dispute and dismiss the arbitration. None of them is on point. Each case relied upon by plaintiff arose in a contractual arbitration not involving an uninsured motorist claim, and did not arise from the enforcement of a discovery obligation.[10]

*Plaintiff Was Subject to the Personal Jurisdiction of the Court*

Plaintiff also contends the superior court never acquired in personam jurisdiction over her because defendant's moving papers on both motions were served by mail on her attorney, and not delivered to her personally. For that reason, she argues the court lacked the power to rule on the discovery motion or to dismiss her arbitration. We disagree.

---

[10] *Blake v. Ecker* (2001) 93 Cal.App.4th 728 [113 Cal.Rptr.2d 422] (court had no jurisdiction to dismiss arbitration of sexual harassment claim); *Brock v. Kaiser Foundation Hospitals, supra,* 10 Cal.App.4th 1790 (court had no jurisdiction to dismiss arbitration of medical malpractice claim); *Byerly v. Sale* (1988) 204 Cal.App.3d 1312 [251 Cal.Rptr. 749] (same).

In making her argument regarding lack of personal jurisdiction, plaintiff ignores an important fact—*she* commenced the arbitration. A demand for arbitration is a "pleading analogous to a complaint in a civil lawsuit." (*Blatt v. Farley* (1990) 226 Cal.App.3d 621, 627 [276 Cal.Rptr. 612].) Defendant did not contest plaintiff's right to arbitrate. Instead, it proceeded to take discovery in a normal fashion, and plaintiff responded to discovery in a normal fashion—by mail addressed to the respective attorneys for the parties.

As we have discussed, section 11580.2, subdivision (f), makes applicable to uninsured motorist arbitrations "all rights, remedies, obligations, liabilities and *procedures* set forth in [the Civil Discovery Act]." (Italics added.) The *procedure* for obtaining a discovery sanction is set forth in section 2023, subdivision (b) of the Code of Civil Procedure. "[T]he court, *after notice* to any affected party, person, or attorney, and after opportunity for hearing, may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process." (Italics added.) To whom, and by what means, must the notice of a discovery motion be given? Section 1015 of the Code of Civil Procedure requires "in all cases where a party has an attorney in the action or proceeding, the service of papers, when required, must be upon the attorney instead of the party, except service of subpenas, of writs, and other process issued in the suit, and of papers to bring him into contempt." Section 1012 of the Code of Civil Procedure permits service of motions by mail where the person to be served has an office "at a place where there is a delivery service by mail."

The arbitration agreement contained in the insurance policy is not a part of the record on appeal. But "where a statute requires the contract to provide for certain matters, the statute becomes a part of the contract, imposing an arbitration agreement at least as broad as the statutory specifications." (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 479 [121 Cal.Rptr. 477, 535 P.2d 341].) Accordingly, when plaintiff demanded arbitration, she was acknowledging, as a matter of law, the superior court had jurisdiction to decide discovery disputes arising in her arbitration.

We are not concerned here with a constitutional due process claim. No contention has been made, nor could it be made, that plaintiff did not have notice of both the discovery motion and the motion to dismiss and an opportunity to be heard. The attorney representing her in the arbitration proceeding received the moving papers for each motion, and, although no opposition on the merits was presented at the hearing of either motion, her attorney appeared. The opportunity to be heard was clearly available.

The *manner* by which a court acquires jurisdiction is governed by statute. We have not found any statute that requires service of the instant discovery motions to be made in the manner of service of summons, nor has counsel. Section 1290.4, subdivision (b) of the Code of Civil Procedure does set forth service requirements for a "petition" under the contractual arbitration law. Service of a "petition" shall be made as the parties provided in their arbitration agreement, or, if no method was agreed upon, service must be made in the same manner provided by law for service of summons. But the petitions to which section 1290.4 apply are those authorized under the contractual arbitration law, viz.: (1) a petition to compel arbitration (Code Civ. Proc., § 1281.2); (2) a petition to consolidate separate arbitration proceedings (Code Civ. Proc., § 1281.3); (3) a petition to appoint an arbitrator (Code Civ. Proc., § 1281.6); and (4) a petition to confirm, correct, or vacate an arbitration award (Code Civ. Proc., § 1285). The discovery motions here at issue are not covered by section 1290.4 of the Code of Civil Procedure.

■ Requiring service of a discovery motion in the same manner as a summons, on the very party who initiated the arbitration, who had participated throughout the proceeding by representation of counsel, and while the arbitration proceeding is still pending, would serve no useful or legitimate purpose. (Civ. Code, § 3532 ["The law neither does nor requires idle acts"].) We decline to impose such a procedural hurdle where not required by statute and where the requirements of constitutional due process plainly have been satisfied.

*The Court Did Not Abuse Its Discretion by Dismissing the Arbitration*

■ Plaintiff argues the court abused its discretion by dismissing the arbitration—that a lesser sanction was required. We disagree. While an order staying the arbitration until plaintiff complied with the discovery order may have been an appropriate sanction under Code of Civil Procedure section 2023, subdivision (b)(4)(B), the court did not abuse its discretion in choosing to impose the terminating sanction of dismissal.

■ Disobedience of a court order constitutes an abuse of discovery for which the court may dismiss the action. (Code Civ. Proc., § 2023, subds. (a)(7) & (b)(4)(C).) "In choosing among its various options for imposing a discovery sanction, a trial court exercises discretion, subject to reversal only for manifest abuse exceeding the bounds of reason." (*Kuhns v. State of California* (1992) 8 Cal.App.4th 982, 988 [10 Cal.Rptr.2d 773].)

" 'The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action. . . . Only two facts are absolutely prerequisite to imposition of the sanction: (1) there must be a failure to comply . . . and (2) the failure must be wilful.' " (*Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 36 [9 Cal.Rptr.2d 396].) "[T]he issue before us is not what sanction we would have imposed, but whether the trial court abused its discretion in ordering dismissal as a sanction." (*Laguna Auto Body v. Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 491 [282 Cal.Rptr. 530].)

Substantial evidence supports the court's conclusion that the sanction of dismissal was appropriate. For nearly a year before the dismissal, defendant had attempted to obtain evidence that would have assisted the determination whether plaintiff's dizziness and vertigo were caused by the accident, or whether the symptoms were manifestations of a preexisting condition. Repeated attempts to obtain voluntary cooperation were rebuffed. Defendant sought the assistance of the court, and the court ordered plaintiff to cooperate by signing the authorizations for release of the requested records. After the order was made, plaintiff failed to obey the order, and two months later announced, through counsel, she would not sign the authorizations. Thus, the evidence established that plaintiff flatly refused to obey a court order. This was not an inadvertent failure to respond to discovery, or a mere late service of a discovery response. It was defiant disobedience of the court's order.

Nor does it appear lesser sanctions would have sufficed. Monetary sanctions would not have provided defendant the information to which it was entitled. An evidence sanction is not effective where the party withholding the evidence is not the party who wishes to use it. And the only issue sanction we can envision under these circumstances would be an order establishing that plaintiff's injury was not caused by the accident, a result equivalent to a dismissal of plaintiff's claim. As noted, the court could also have stayed the arbitration until its discovery order was obeyed, but plaintiff had already announced she would *not* obey, and it would not be fair indefinitely to deprive defendant the opportunity to resolve the claim against it. Although plaintiff argues the imposition of a lesser sanction was required, she does not identify which lesser sanction would suffice. The court did not abuse its discretion.

## DISPOSITION

The judgment of dismissal is affirmed. Defendant shall recover its costs on appeal.

Bedsworth, Acting P. J., and Aronson, J., concurred.